**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SANTA FE GOLDWORKS INC. and
DAVID GRIEGO,

Plaintiffs,

v. Civ. No. 24-1005 SCY/KK

TURQUOISE TRAILS, LLC, AHMAD
SHAWABKEH, EDEN ON THE PLAZA,
LLC, MAJED HAMDOUNI, RACHID
SAGHROUNI, FRANCHESKA
SANDOVAL, and MARK SULEIMAN,

Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SANCTIONS**

This Order addresses Plaintiffs' spoliation of evidence allegations. Specifically, Plaintiffs Santa Fe Goldworks and David Griego assert that Defendants Majed Hamdouni and Eden on the Plaza ("Eden") intentionally deleted photographs of Defendant Eden's jewelry inventory, thereby depriving Plaintiffs of the opportunity to compare Plaintiffs' copyrighted jewelry to images of jewelry Defendants sold. Defendant Hamdouni acknowledges that, at some point, his daughter took photos of Defendant Eden's jewelry inventory and that those photos have now been deleted. The parties disagree, however, about when the photos were taken and when they were deleted. Plaintiffs, arguing that Defendant Hamdouni caused the photos to be taken and then deleted after the start of this lawsuit, move for sanctions for spoliation of evidence. Doc. 175; *see also* Doc. 196 (response); Doc. 226 (reply). The Court, however, finds Plaintiffs have failed to meet their burden of proof. Because the information before the Court provides an insufficient basis to conclude that Defendant Hamdouni acted with bad faith in deleting the

photos, the Court denies Plaintiffs' request to issue an adverse inference jury instruction and their request for attorney's fees.

## PROCEDURAL BACKGROUND

### 1. Plaintiffs' Factual Background

Plaintiffs Santa Fe Goldworks and David Griego filed this lawsuit on October 4, 2024, alleging that Defendants Majed Hamdouni, Rachid Saghrouni, and Francheska Sandoval co-owned Defendant Eden[1] and that Eden sold jewelry that infringed on Plaintiffs' copyrighted designs. Doc. 1 ¶¶ 11-13, 33; *see also* Doc. 15 (operative amended complaint, alleging the same). Plaintiffs served Defendants Eden and Hamdouni on October 16, 2024, Docs. 9, 10, and those Defendants filed an answer on October 29, 2024, Doc. 13. At the start of the case, Defendants Hamdouni, Saghrouni, Sandoval, and Eden were all represented by the same counsel, Sarah Ring. Doc. 13.

On January 23, 2025, Plaintiff Goldworks sent its first set of Interrogatories and Requests for Production to Defendant Eden, Docs. 36 & 37, which Eden answered on February 24, 2025, Doc. 5, and supplemented on April 1, 2025, Doc. 55, and June 10, 2025, Doc. 78. The discovery requests and responses relevant to the present dispute are:

> REQUEST FOR PRODUCTION NO. 1: Please produce all inventories of your jewelry, and other lists or spreadsheets showing your jewelry for each year from July 24, 2019 to the present.
>
> RESPONSE: Defendant objects to this request because it is unduly burdensome. Defendant stocks hundreds of pieces of jewelry from numerous distributors.
>
> [SUPPLEMENTAL RESPONSE]: Subject to these objections, Eden states that, other than the Kabana inventory, which does not contain any of the accused pieces, Eden does not have any inventories.

[1] According to Defendants Hamdouni and Saghrouni, they have co-owned Eden since it opened in 2019, each having a 50% membership interest. Doc. 196 at 3; Doc. 72-5 ¶ 2; Doc. 175-1 at 4-5; Doc. 196-1 ¶¶ 3-5.

> REQUEST FOR PRODUCTION NO. 2: Please produce all images, sketches, visual depictions, and written descriptions of each piece of Eden's Jewelry.
>
> RESPONSE: Defendant objects to the definition of "Eden's Jewelry" as overly broad and calls for a legal conclusion as to what is "similar." Without waiving this objection, Defendant has produced responsive documents.
>
> [SUPPLEMENTAL RESPONSE]: Defendant believes that it has produced all responsive documents in its custody or control.
>
> INTERROGATORY NO. 4: Describe how you make and maintain an inventory for the jewelry you have kept or sold since July 24, 2019 including how you identify or name each item of jewelry.
>
> ANSWER: Defendant closed its doors as of January 1, 2025. Prior to closing its doors Defendant did not have any formal process for maintaining inventory.
>
> INTERROGATORY NO. 5: For each inventory, list, spreadsheet, or other document produced in response to Request for Production No. 1, identify each item of Eden's Jewelry.
>
> ANSWER: There are no responsive documents.
>
> [SUPPLEMENTAL ANSWER]: But each item of Eden's Jewelry that it has ever obtained is shown in EDEN000001, EDEN000002, EDEN000069, EDEN000070, EDEN000071, EDEN000072, EDEN000073.
>
> INTERROGATORY NO. 20: If you are aware of any Document responsive to a request for production but not in your possession, provide a summary of each Document's contents, and if it was once in your possession, explain when and why it was disposed of or otherwise became unavailable.
>
> ANSWER: None.

Doc. 72-10 at 3, 6; Doc. 72-11 at 3; Doc. 77-6 at 3; Doc. 77-3 at 3; Doc. 93-3 at 3. Defendant Hamdouni verified Eden's responses to these interrogatories. Doc. 72-10 at 7.

On May 27, 2025, Plaintiff Goldworks filed a motion to compel, asking the Court to compel, in part, Defendant Eden's inventory records. Doc. 72. As part of the motion, Plaintiff

Goldworks attached an affidavit from then-Defendant Rachid Saghrouni,[2] in which Mr. Saghrouni asserted,

> Prior to closing in December of 2024, Eden ordered a point-of-sale system called Lightspeed and was going to [use] it to process sales. Around November of 2024, Majed's daughter Mia Hamdouni took pictures of all Eden's gold jewelry. Those pictures were uploaded to Lightspeed. Because Eden was selling jewelry with the Copied Design at that time, I expect those pieces were photographed and uploaded.

Doc. 72-5 ¶ 10. As such, in the motion to compel, Plaintiff Goldworks argued that Defendant Eden should produce the inventory photos as responsive to its discovery requests. Doc. 72 at 10-11. In response, Defendant Eden asserted that it was a "mom-and-pop jewelry retailer [that] did not have detailed records." Doc. 77 at 1. It further explained that "although Eden did purchase a Lightspeed system and took photographs of its inventory, Eden never created an inventory in the Lightspeed system or otherwise. There is simply no inventory to produce." Doc. 77 at 7 (citing Doc. 77-2 ¶ 11, declaration of Majed Hamdouni which states that "Eden has never kept inventory for its jewelry"). In reply, Plaintiff Goldworks argued that Defendant Eden "admits that it took these photos specifically for the purpose of inventory and to add them to a point of sale system. Regardless of their purpose, the compilation of photographs is itself responsive to Goldworks' requests." Doc. 83 at 8.

Judge Khalsa held a hearing regarding the motion to compel on July 10, 2025, during which the Court expressed its concern that Defendants Eden and Hamdouni were not acting in good faith regarding discovery obligations. Doc. 343 at 41:3-19; *see also id.* at 42:22-25 ("I'm concerned of the - - about the substance of what was disclosed, when, and why at every turn it

---

[2] On June 27, 2025, the parties filed a stipulation of dismissal as to Defendant Saghrouni. Doc. 87.

seems that you're presenting affidavits on behalf of your client that are not true."). During the hearing, counsel for Defendants Eden and Hamdouni had this exchange with the Court:

> Sarah Ring: "[W]hen [Eden] closed down the shop, yes they took a photograph of every piece of jewelry."
> Court: "And what was the purpose of that?"
> Ms. Ring: "It was to create an inventory, which was never created. And now, I guess the photographs have been deleted for whatever reason, I don't know why."

Doc. 343 at 47:4-9. Plaintiffs claim that this "revelation of the existence of an inventory and its destruction," was a surprise to them. Doc. 175 at 3. Judge Khalsa followed the hearing up with a written order that Defendant Eden provide complete responses to certain discovery, including Interrogatories Nos. 4-5 and Request for Production Nos. 1-2. Doc. 100.

Thereafter, on September 5, 2025, counsel for Defendants Eden, Hamdouni, and Sandoval—Sarah Ring—withdrew.[3] Doc. 136. As such, Judge Khalsa ordered that, if Defendant Eden does not obtain substitute counsel by September 12, 2025, Defendant Hamdouni, "as the managing member of Eden on the Plaza LLC, shall respond on behalf of Eden on the Plaza LLC in accordance with the Court's Order on Goldworks' Motion to Compel, doc. 100, and shall also respond on behalf of Eden on the Plaza LLC to Plaintiff David Griego's First Set of Interrogatories and Requests for Production to Eden on the Plaza LLC, no later than October 10, 2025." Doc. 140. Plaintiffs filed their motion for sanctions on November 20, 2025, asserting they never received the photo inventory because Defendant Hamdouni deleted it. Doc. 175.

In sum, under Plaintiffs' version of events, they filed the present lawsuit in October 2024; in November 2024, Defendant Hamdouni's daughter Mia took photos of all Defendant Eden's gold jewelry; in January 2025 Plaintiff Goldworks requested such inventory and photos in

[3] New counsel appeared for Defendants Hamdouni and Sandoval, Doc. 129, 134, but Defendant Eden never retained new counsel.

discovery but Defendants Eden and Hamdouni never provided it; and the photos were deleted at some point prior to the July 2025 motion to compel hearing.

**2. Defendant Hamdouni's Additional Factual Background**

As to the photo inventory, Defendant Hamdouni asserts that Defendant Eden purchased a subscription to a retail-point-of-service system called Lightspeed around July 2023. Doc. 196-1 ¶ 8 (Hamdouni declaration). Shortly after purchasing Lightspeed, Defendant Hamdouni's daughter Mia took photos of Defendant Eden's inventory and uploaded those images to Lightspeed, a process which took several months. *Id.* ¶¶ 11-13. After uploading the photos, Mia deleted the photos from her personal phone. *Id.* ¶ 12; *see also* Doc. 343 at 46:21-23 (July 10, 2025 hearing transcript, in which counsel for Defendant Hamdouni confirmed that Mia took photos and then deleted them from her phone). Defendant Eden terminated its subscription to Lightspeed in May 2024.[4] Doc. 196-1 ¶ 14. After the onset of this lawsuit, Defendant Hamdouni contacted Lightspeed and learned that Lightspeed would have deleted the photos around November 2024—six months after inactivity. *Id.* ¶¶ 17-18.

As to former-Defendant Saghrouni, while Ms. Ring still represented him in the present case (along with Defendants Eden and Hamdouni), he retained separate counsel, Nghiem Nguyen, for himself and for Defendant Eden and filed a lawsuit on April 11, 2025 against Defendant Hamdouni in state court. Doc. 196-2 ¶¶ 2-3. On May 2, 2025, Mr. Saghrouni entered into a settlement agreement with Plaintiffs, which provided that:

> Mr. Saghrouni has retained personal counsel, Nghiem Nguyen of Business Law Southwest LLC, in connections with the Dispute between Goldworks and Mr.

[4] To support his assertion that Defendant Eden terminated its Lightspeed subscription in May 2024, Defendant Hamdouni attached to his affidavit Lightspeed invoices from July 2023 through May 2024. Doc. 196-1 at 5-26. However, these invoices do not necessarily show that Defendant Eden terminated its subscription in May 2024 because the May invoice says nothing about it being a final invoice. *See id.* at 25.

> Saghrouni. Through counsel, Mr. Saghrouni has represented that he has information and evidence implicating Mark Suleiman and Majed Hamdouni in willful infringement of Goldwork's River of Love design.
>
> Mr. Saghrouni wishes to cooperate and truthfully testify about his knowledge of Mr. Suleiman and Mr. Hamdouni's activities in connections with the Dispute. In exchanged for Mr. Saghrouni's cooperation, Goldworks desires to release Mr. Saghrouni from liability in connection with the Dispute.

Doc. 196-3 at 1. On May 9, 2025, Plaintiffs' counsel met with Mr. Saghrouni and Mr. Nguyen to discuss this matter, Doc. 72 at 3, and Mr. Saghrouni executed the declaration in which he asserts that Mia Hamdouni took the inventory photos in November 2024, Doc. 72-5. Defendant Hamdouni asserts that "Mr. Nghiem Nguyen never advised Ms. Ring of these actions, whether on behalf of Eden on the Plaza or on behalf of Mr. Saghrouni," and "Plaintiff's counsel never advised Ms. Ring that they had spoken with Mr. Saghrouni." Doc. 196 at 5; *see also* Doc. 343 at 85:23-25 (July 10, 2025 hearing transcript in which Ms. Ring states, "I just found out today that my client [Mr. Saghrouni] settled while I represented him from opposing counsel"); Doc. 72-7 (email from Plaintiffs' counsel to Ms. Ring on May 22, 2025 indicating Plaintiffs' counsel recently conferred with Mr. Nguyen regarding Mr. Saghrouni's declaration).

The parties stipulated to dismissal of Defendant Saghrouni from this case on June 27, 2025. Doc. 87. Ms. Ring then moved to withdraw as counsel for Defendants Eden and Hamdouni on July 14 , 2026, Doc. 101, and the Court granted that requested on September 5, 2025, Doc. 136.

In sum, under Defendant Hamdouni's version of events, Mia took photos of Defendant Eden's inventory and uploaded them to the Lightspeed sometime after July 2023. Defendant Eden terminated its Lightspeed subscription in May 2024. After the onset of this lawsuit in October 2024, Defendant Hamdouni contacted Lightspeed and learned that Lightspeed would have deleted the photos around November 2024.

## LEGAL STANDARD

"Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[5] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009); *see also Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). Specific to electronically stored information, Federal Rule of Civil Procedure 37(e) provides that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> . . .
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> . . .
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party . . . .

Indeed, "if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Turner*, 563 F.3d at 1149. A district court's ruling on a motion for spoliation

---

[5] The majority of courts and authorities hold that a duty to preserve evidence arises when litigation is "reasonably foreseeable" or "reasonably anticipated," rather than imminent. *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, No. 05cv279 WJ/ACT, 2012 WL 12294413, at *2-3 (D.N.M. Aug. 31, 2012), *recommendation adopted*, 2012 WL 5387069 (D.N.M. Oct. 3, 2012). "Other courts to discuss the 'imminence' standard have concluded that the Tenth Circuit offered this as one example of when spoliation sanctions are appropriate, rather than the only circumstance under which a court may award spoliation sanctions." *Oliver v. Meow Wolf, Inc.*, No. CV 20-237 KK/SCY, 2021 WL 3618314, at *7 (D.N.M. Aug. 16, 2021) (citing *United States ex rel. Baker*, 2012 WL 12294413, at *3 n.2). Here, the Court need not resolve this issue because, as discussed further below, both parties agree that the photos were deleted after the start of the litigation—i.e., once litigation was past reasonably foreseeable or imminent and was actually happening.

sanctions is reviewed for abuse of discretion. *Helget v. City of Hays, Kan.*, 844 F.3d 1216, 1225 (10th Cir. 2017).

## ANALYSIS

Plaintiffs request sanctions against both Defendants Majed Hamdouni and Eden. As to Defendant Eden, Plaintiffs request default judgment, given its lack of counsel and lack of participation in the case. This issue, however, has already been resolved as the Court entered default against Defendant Eden and instructed Plaintiffs that they may move for default judgment after obtaining an entry of judgment against the other Eden Defendants (Majed Hamdouni, Francheska Sandoval, and Mark Suleiman). Doc. 310. Accordingly, the Court denies this request as moot.

Turning to Defendant Hamdouni, Plaintiffs request that the Court order an adverse inference jury instruction and presumption that the spoliated evidence would have been unfavorable to Defendant Hamdouni with respect to Plaintiffs' claims for copyright infringement and damages. This dispute boils down to a factual one: while it is undisputed that photos of the gold jewelry were taken and later deleted, the parties dispute when the photos were taken and when they were deleted. The Court considers whether to impose Plaintiffs' requested sanctions with this dispute in mind.

### 1. Duty to Preserve Evidence

Under either party's version of events, the photos were deleted after Defendant Hamdouni became aware of the lawsuit and after he had a duty to preserve evidence. Under Plaintiffs' version, Mia Hamdouni took inventory photos and uploaded them to Lightspeed in November 2024, after the start of this lawsuit in October 2024. Those photos were then deleted at some point prior to July 2025, during a time in which Plaintiffs were repeatedly requesting

from Defendant Eden discovery on all inventory. Accepting this version of events, at a minimum Defendant Hamdouni would be on notice at the time he received this lawsuit that photos of Defendant Eden's jewelry inventory—i.e., jewelry inventory being the topic of the lawsuit—would be relevant. Along with this notice is the duty to preserve any inventory photos he possessed. Thus, accepting Plaintiffs' version of the events, Defendant Hamdouni had a duty to preserve photos of Defendant Eden's inventory that Defendants Hamdouni and Eden had in their possession.

Defendant Hamdouni, on the other hand, asserts that "[a]ny spoliation inference or related sanction would be inappropriate because Eden and/or Mr. Hamdouni were under no obligation to preserve pictures taken in 2023, and deleted months before becoming aware of this lawsuit." Doc. 196 at 7. Indeed, under Defendant Hamdouni's version of events, Mia took photos, uploaded them to Lightspeed, and then deleted them from her phone at some point after July 2023. Defendant Hamdouni then lost access to those photos in May 2024 when Defendant Eden terminated its Lightspeed subscription. However, Defendant Hamdouni also concedes he later learned that Lightspeed would not have deleted the photos until around November 2024, after he was served the complaint in this case.

Defendant Hamdouni thus does not argue he had no duty to preserve inventory photos once he could have reasonably anticipated this litigation. Indeed, he acknowledges that "once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Doc. 196 at 7 (internal quotation and citation omitted). He further recognizes that "[l]itigants are under an obligation to preserve evidence . . . when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future

litigation." Doc. 196 at 7 (internal quotation and citation omitted). Instead of arguing he had no duty at all, he argues, "By the time a request for inventory was ever provided to Eden on the Plaza, LLC, the inventory was deleted from the Lightspeed POS system." *Id.*

Plaintiffs counter that, at the latest, Defendant Hamdouni knew the photos would be relevant when he was served with this lawsuit in October 2024, the month before he claims the photos were deleted. Doc. 226 at 2-4. The Court agrees with Plaintiffs that, in a copyright infringement case, the relevance of inventory photos is obvious and that, at the latest, the October service of this lawsuit placed Defendant Hamdouni on notice of the need to preserve such evidence. To the extent Defendant Hamdouni argues he had no duty to preserve evidence until he received a discovery request for that evidence, the Court rejects that argument.

The question of what duty a party has to preserve evidence in the possession of a third-party, however, is more difficult than the question of what duty a party has to preserve evidence that is in the party's possession. *See Hauck v. Wabash Nat'l Corp.*, No. CV 18-471 KG/LF, 2020 WL 532345, at *7 (D.N.M. Feb. 3, 2020) ("Without custody, possession, or control over the subject semi-trailer, Plaintiff did not have a duty to preserve the subject semi-trailer."). Under Defendant Hamdouni's version of the facts, when he was served with the lawsuit in October 2024, he no longer possessed the photos and no longer had a subscription with the third-party who might still have copies. Doc. 196 at 7.

The Court, however, need not decide the more difficult question of whether, under Defendant Hamdouni's version of the facts, he had a duty, within two to six weeks of being served with this lawsuit (i.e. between service of the complaint in October 2024 and when Lightspeed would have deleted the photos in November 2024), to contact Lightspeed in an

attempt to retrieve the photos. This is because, for the reasons set forth below, the Court concludes that Plaintiffs have not proven that such a breach of a duty would constitute bad faith.

In sum, under Plaintiffs' version of events, Defendant Hamdouni had a duty to preserve the photos which were in his possession. As set forth below, however, Plaintiffs, who carry the burden of proof, have failed to prove their version of events. The Court need not decide Plaintiffs' secondary argument, that even under Defendant Hamdouni's version of events he had a duty to preserve, because, as discussed below, Plaintiffs fail to show bad faith.

**2. Prejudice**

Plaintiffs argue, and Defendant Hamdouni does not dispute, that the destruction of the photos has deprived Plaintiffs of essential evidence of liability and damages. "[P]rejudice is shown when the destroyed evidence goes to a critical issue and the evidence at hand is conflicting." *U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No. CIV. 05-279 WJ/ACT, 2012 WL 12294413, at *14 (D.N.M. Aug. 31, 2012). The amended complaint alleges that Defendant Eden sold jewelry that infringed on Plaintiffs' copyrighted designs. Thus, what inventory Defendant Eden carried, and particularly what inventory of alleged-infringing jewelry it carried, is critical to Plaintiffs' case. As Plaintiffs explain, deletion of the photos deprived Plaintiffs "of the only record of what jewelry Eden had near the time this action was filed" and "prevents Plaintiffs from testing the completeness of the final inventory Mr. Hamdouni produced for inspection after Eden closed." Doc. 175 at 6. The Court thus finds that Plaintiffs have been prejudiced by the destruction of any of the inventory evidence.

**3. Bad Faith**

To address the element of bad faith, the Court must consider when Defendant Hamdouni could have reasonably anticipated this lawsuit and when the photos were deleted. Plaintiffs assert

Mia Hamdouni took the inventory photos in November 2024. Doc. 175 at 2; Doc. 72-5. Shortly thereafter, on January 23, 2025, Plaintiffs served a request for production that required Defendant Eden to produce an inventory of its jewelry. Doc. 175 at 2; Doc. 72-11. And, Plaintiffs continue, "[b]etween November 2024 and July 2025, likely while plaintiffs' document request was pending, the photographs were deleted." Doc. 175 at 2. Thus, Plaintiffs' theory appears to be that Plaintiffs' request for an inventory production motivated someone associated with Defendant Eden to delete the inventory photographs Mia had taken in November 2024. If one of the Defendants, or an agent of one of the Defendants, deleted the photographs to avoid having to produce them in discovery, such action clearly constitutes intentional, bad faith, spoliation of evidence.

As noted above, however, Defendant Hamdouni has filed a competing declaration. Defendant Hamdouni declared that, shortly after Defendant Eden purchased Lightspeed in July 2023, Mia took the inventory photos for the purpose of loading them onto Lightspeed and then after uploading the images (a process that took several months), Mia deleted the photos from the phone on which she took them. Doc. 196-1 ¶¶ 8, 11-13 (Hamdouni declaration); *see also* Doc. 343 at 46:21-23 (July 10, 2025 hearing transcript, in which counsel for Defendant Hamdouni confirmed that his daughter took photos and then deleted them from her phone). Defendant Hamdouni has also provided invoices demonstrating that Defendant Eden had a Lightspeed subscription from at least July 2023 through May 2024. Doc. 196-1 at 25. Although these invoices do not establish that Defendant Eden's subscription ended on May 2024, a May 2024 end date would be consistent with Lightspeed applying a six-month retention policy that resulted in a deletion of the photos in November 2024, as Defendant Hamdouni alleges.

In short, Plaintiffs and Defendant Hamdouni present differing accounts of when Mia took the photos and when the photos were deleted. Plaintiffs carry the burden on their motion to show that they are entitled to sanctions—i.e., that Defendant Hamdouni acted in bad faith. *See Nez v. United States*, 367 F. Supp. 3d 1245, 1268 (D.N.M. 2019) ("[I]f a party seeks a finding of an adverse inference, that party also has the burden of proving bad faith on the part of the party who is unable to produce the record.") (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009)). Because Plaintiffs carry the burden of proof, the Court begins its analysis with the theory of spoliation Plaintiffs present in their motion.

The problem with Plaintiffs' theory of spoliation is that it is inconsistent with the timeline Plaintiffs present. Plaintiffs' theory is that Defendant Hamdouni destroyed the photos in bad faith: Defendant Hamdouni knew the photos would help Plaintiffs prove their case, he wanted to prevent Plaintiffs from ever obtaining the photos, and so he destroyed them. *See* Doc. 175 at 1-2. That is, the premise of Plaintiffs' theory is that once Defendant Hamdouni learned he was getting sued for copyright infringement, he became motivated to get rid of evidence of such infringement, namely, inventory photos. But Plaintiffs also assert that Defendant Hamdouni did not create inventory photos until November 2024—one month after Defendants were served with this lawsuit. That Defendant Hamdouni would create, rather than delete, inventory photos after he found out about this lawsuit is inconsistent with the premise of Plaintiffs' theory, that knowledge of the lawsuit caused Defendant Hamdouni to want to make sure no photos of the inventory existed.

Faced with this timeline, Plaintiffs in reply seize on dates Defendant Hamdouni presented in his response. Specifically, Plaintiffs focus on Defendant Hamdouni's statement that Mia created the photos before October 2024 and that the photos were deleted the following month.

Doc. 226 at 3-4. As noted above, it is true that as of October 2024, at the latest, Defendant Hamdouni had a duty to preserve all photos in his possession, custody, or control. But, at that point, according to Defendant Hamdouni, Defendant Eden had no ongoing relationship with Lightspeed as it had terminated its subscription to Lightspeed approximately five months earlier. Doc. 196 at 7. And, at that point, Defendant Hamdouni asserts, he did not know Lightspeed would delete the pictures after six months of inactivity. *Id*. at 8. Whether Defendant Hamdouni, upon learning of the lawsuit, was negligent in not immediately contacting Lightspeed, however, is not an issue the Court needs to resolve. This is because negligent spoliation would not justify the sanction Plaintiffs seek. *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) ("[m]ere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.") (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).

The relevant question is whether Defendant Hamdouni's failure to immediately contact Lightspeed in an attempt to retrieve copies of the photos would constitute *bad faith* spoliation of evidence. Defendant Hamdouni claims his daughter took and then deleted the photos before he could have anticipated this lawsuit and that within a mere two to six weeks after he was served, a third-party, with whom Defendant Eden no longer had a subscription, deleted its copy of the photos. Under this version of events Defendant Hamdouni's conduct does not rise to the level of bad faith spoliation.

Plaintiffs then make an additional argument for the first time in reply:

> Mr. Hamdouni is currently asserting a joint defense privilege over communications with Mr. Suleiman that took place over a year before the complaint was filed, during the period Eden was actually using the photographic inventory. *See* Doc. 211, at 13-15; doc. 211-12. There can be no common interest against plaintiffs without Mr. Hamdouni having knowledge of possible claims by plaintiffs. Mr. Hamdouni cannot claim on the one hand that he did not have a duty

> to preserve these photos because he lacked knowledge of plaintiffs' claims, and on the other hand assert a joint defense privilege predicated on a common adverse interest against plaintiffs Santa Fe Goldworks, Inc. and David Griego.

Doc. 226 at 5.[6] The Court rejects this argument for two reasons.

First, since Plaintiffs filed their reply, Defendant Hamdouni appears to have abandoned any joint defense privilege argument he might have previously made. Doc. 340 (Plaintiffs' status report advising the Court that, because Defendant Hamdouni submitted final supplemental responses to Plaintiffs' discovery requests, Plaintiffs' motion to compel is now moot). Because Defendant Hamdouni does not appear to be asserting a joint defense privilege, the Court need not consider the portion of Plaintiffs' argument that is premised on Defendant Hamdouni's assertion of a joint defense privilege.

Second, even if Defendant Hamdouni had not abandoned his pre-lawsuit joint defense privilege claim, Plaintiffs' theory again suffers from a temporal inconsistency. The premise of Plaintiffs' argument here is that when Defendant Hamdouni first anticipated the present litigation, he developed a motive to destroy any inventory photos that might have existed. Plaintiffs assert that Defendant Hamdouni anticipated this litigation "over a year before the complaint was filed . . . ." Doc. 226 at 5.

---

[6] Typically, arguments not raised for the first time until reply are waived. *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("The general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.") (cleaned up). Here, however, it is unclear when Defendant Hamdouni asserted a joint defense privilege. The document to which Plaintiffs cite is a motion to compel Defendants filed on January 26, 2026—approximately six weeks after Plaintiffs filed the present motion for spoliation sanctions. If Plaintiffs did not learn of Defendant Hamdouni's joint defense privilege claim until after they filed the present motion for sanctions, Plaintiffs obviously could not have raised this issue in their original motion. Because Defendant Hamdouni appears to have abandoned his pre-lawsuit joint defense privilege arguments, however, the Court need not consider whether it was justified for Plaintiffs to raise this argument in their reply brief.

Given Defendant Hamdouni's asserted motive to destroy any inventory photos, one would not expect him to then *create* inventory photos. But under Plaintiffs' version of the facts, Defendant Hamdouni did create photos after the motive to destroy them arose—much later, in November 2024. And under Defendant Hamdouni's version of the facts, he purchased a Lightspeed subscription in July 2023, Doc. 196-1 ¶ 8 (Hamdouni declaration), his daughter began taking inventory photos shortly thereafter, and then over the course of the next several months uploaded those images to Lightspeed. *Id.* ¶¶ 11-13. Although the record does not indicate exactly when communications that led to the joint privilege assertion occurred (Plaintiffs say it was more than a year before the October 2024 complaint, Doc. 226 at 5) or exactly when Mia stopped uploading the photos she took (Defendant Hamdouni says it was several months after July 2023, Doc. 196-1 at ¶¶ 8, 11-13), it appears possible, if not likely, that Mia continued uploading photos after Plaintiffs assert Defendant Hamdouni obtained the motive to destroy the photos. At a minimum, Plaintiffs have not proven that Defendant Hamdouni deleted, rather than continued to upload, photos after the putative motive to delete them arose.

Under these circumstances, Plaintiffs have not met their burden of establishing that Defendant Hamdouni destroyed the photos in bad faith.[7] Thus, the Court denies their request to issue an adverse jury instruction. Because the Court denies this request, the Court also denies

[7] Despite its finding that Plaintiffs did not meet their burden to prove bad faith, the Court finds troubling Defendant Eden's repeated inaccurate responses to Plaintiffs' discovery requests (responses which Defendant Hamdouni verified), as listed above. Because Judge Khalsa has already addressed Plaintiffs' motion to compel inventory information, to include Plaintiffs' request for attorneys' fees in connection with their efforts to obtain such information, Doc. 100, the Court will not now reconsider these issues. However, the Court's present ruling does not address whether it will permit Plaintiffs to ask Defendant Hamdouni about the inaccurate discovery responses during cross-examination. Similarly, the Court's present ruling does not address the extent, if any, to which inaccurate discovery responses constitute admissible evidence of intent.

Plaintiffs' request for an award of attorney's fees and costs associated with investigating and briefing the spoliation issue. Doc. 175 at 13.

**CONCLUSION**

For the reasons discussed above, the Court DENIES Plaintiffs' Motion for Sanctions Against Defendants Eden on the Plaza and Majed Hamdouni for Spoliation of Evidence (Doc. 175).

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE